## SUPREME COURT.

EMILY MARTIN, and others, respondents agt. ANDREW MAR-
TIN, Executor, &c., appellant.

Where *executors* are authorized by the will to sell, lease, receive rents, repair, and
in case of loss or damage by fire, to apply the insurance money to rebuilding,
these duties can be performed as a power in trust merely, without taking any
estate in the lands.

Where by the terms of the will the testator's whole estate passed to his children
at his death, therefore, whether the testator intended to vest in his executors
the estate in trust, or to create in them a power in trust for its management, it
would operate only upon the shares of such of his children as were infants at the
time of his death, and continue only as to each share during the infancy of the
children respectively. It would be inconsistent with this provision to hold that
the title to any part of the estate vested in the trustees, and equally inconsistent
with their rights as owners, for the executors to exercise a power to sell, &c.,
after the children had reached their majority, except for the purpose of paying
debts.

*New York General Term, November,* 1864.

*Before* LEONARD, *P. J.,* BARNARD *and* SUTHERLAND, *Justices.*

APPEAL by defendant from a judgment at special term.

By the court, LEONARD, J. There is clearly no express
devise of the landed estate of the testator to his executors.
A devise of an estate in lands has been implied, when acts
and duties to be performed under the express directions of
the will would otherwise fail, and in such a case it has been
held that the intention of the testator to devise the estate
to trustees is manifested, and that they take the title by
implication. In the present case it does not appear to be
necessary to hold that the executors take any estate in the
lands. They are authorized to sell, lease, receive rents,
repair, and in case of loss or damage by fire, to apply the
insurance money to rebuilding. All of these duties can
be performed by the executors under the authority con-
ferred by the will, treated as a power in trust merely.

The testator did not contemplate any trust. This is
clear from the fact that no application is made by the pro-

visions of the will in respect to the large fund which would necessarily accumulate in their hands from income. The directions contained in the will would, apparently, absorb but a small portion of the income. A trust is created usually for some express object, and is to be continued only till the object is attained, or the period limited therefor has expired. Here there is no object for a trust indicated, unless it be supposed that repairing the property is sufficient. But whether the testator intended to vest the estate in trust, or to create a power in trust for its management, it will operate only upon the shares of such of his children as were infants at the time of his death, and continue only as to each share during the infancy of the children respectively. By the second section of his will his whole estate passed to his children at the death of the testator. It would be inconsistent with this provision to hold that the title to any part of the estate was vested in trustees, and equally inconsistent with their rights as owners for the executors to exercise a power to sell, &c., after the children had reached their majority, except for the purpose of paying debts. The judge has found that there are no debts, except a very small amount, not equal to the amount of personal property. This fact seems to be sustained by the evidence. It is true one of the witnesses had heard of a large claim, but its existence as a debt was not proved. Under such circumstances it cannot be doubted that the children had a right to take and hold the land.

The testator appointed his executors the guardians of his minor children, and I think he intended them to act for their interest in selling the land, combining the exercise of the power to sell with their duty as guardians. All the children had, however, reached their majority before the testator died, excepting only his son Thomas. When this action was commenced, Thomas was over twenty years of age, and at the trial he wanted some three months only of his majority. It appears to be pretty clear that the defend-

ants Andrew Martin and Peter Lynch, were not guardians of Thomas Martin, for the same clause of the will which appoints Andrew and Peter guardians, also appoints Thomas a guardian over himself. As to Thomas Martin, the guardianship was inoperative under this provision. But assuming that Andrew Martin had the power to sell the shares of Thomas under the directions of the will, the court has the power to control its exercise when a sale is manifestly opposed to the interest of Thomas.

The judge at special term, acting as *parens patriæ*, could determine from the facts proven whether it was for the interest of the infant that his real estate should be converted into currency. Why, it might be well asked, could Andrew Martin choose for the infant in this respect better than the judge? Has he more intelligence? Is he more disinterested? It cannot be doubted that the property of an infant in 1863, was safer invested in land than it would be if exchanged for the currency then in use. Whatever may be the answer to these questions, it is of very little practical importance to reverse the decision, even if it could lawfully be done, as all the children, including Thomas, are now of age, and the executors can no longer exercise the power of sale under the will. The exceptions taken to the refusal of the judge to admit evidence as to the habits of Thomas Martin, in respect to temperance, are of no moment, as the evidence was immaterial. The objection as to the admission of the written statement of the wishes of Thomas Martin in respect to the sale of the real estate, is not well taken. No argument can be urged against its admission except its want of materiality. If the evidence had been excluded, it does not appear that the judge could have arrived at any other decision of the case. The only conclusion to be drawn from this statement is, that Thomas thought very much as the judge did. As evidence, the statement had no operation. Probably the defendants acted honestly in their wish to sell, and in de-

fending this action.    I think their costs should be allowed them out of the fund.

The judgment should be affirmed, and the costs of both parties on the appeal paid from the estate.